CASE 19.—ACTION BY C. C. BROWN AND OTHERS AGAINST W. S. DYCUS AND OTHERS TO REMOVE DEBTS DUE UNDER A PARTNERSHIP SETTLEMENT.— October 21, 1909.

## Dycus, &c. v. Brown, &c.

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for plaintiffs, defendants appeal.—Reversed.

1. Pleading—Answer—Admissions—Failure to Deny.—Averments of a petition are confessed by failure to deny them.

2. Bankruptcy—Discharge—Claims Barred.—Creditors who had actual notice of the adjudication of their debtor in bankruptcy, and of the steps taken in the proceedings, were bound to present their claim, though not mentioned as creditors, and on failure so to do their claim is barred by the discharge.

3. Partnership—The Relation—Creation.—Defendants executed a contract with plaintiffs which stated that it was for the purpose of buying and selling tobacco on joint account during the season, and by which defendants agreed to buy tobacco to be paid for with money furnished by plaintiffs; and ship it for sale by plaintiffs, defendants to receive a certain amount as compensation for buying and delivering it, and the contract further provided that when the tobacco was sold and the expenses paid, including defendant's commission, the profits or loss should be divided equally. Held, that plaintiffs and defendants were partners in the transaction.

4. Bankruptcy—Unliquidated Claims—Evidence.—In an action against bankrupts, after their discharge, by persons engaged in a joint transaction with them for the purchase and sale of tobacco, to recover losses in the partnership transaction, in which defendants set up their discharge in bankruptcy, evidence held to show that plaintiff knew, when defendants filed their petition in bankruptcy, that the transaction would result in loss, leaving defendants indebted to them, though the amount was uncertain.

Dycus, &c. v. Brown, &c.

5.  Bankruptcy—Discharge —"Unliquidated    Claim"— Debts be-
    tween Partners.—Bankr. Act July 1, 1898, c. 541; 30 Stat. 544
    (U. S. Comp. St. 1901, p. 3418), provides that if one or more, but
    not all of the members of a firm are adjudged bankrupt, the
    firm property shall not be administered in bankruptcy. unless on
    consent of the non-bankrupt partners but that such partners
    shall settle the partnership business as soon as possible, and
    account for the interest of the bankrupt partners.  By section
    63 debts of the bankrupts may be proved and allowed against
    their estate which are (1) a fixed liability as evidenced by
    a judgment or an instrument in writing, owing at the filing
    of the petition, whether then payable or not; (4) founded up-
    on an open account or upon contract; (5) founded upon provable
    debts reduced to judgments after the petition is filed and
    before discharge.  Section 63, subd. "b" permits unliquidated
    claims against the bankrupt to be liquidated as the court
    may direct, and may thereafter be proved.  Plaintiffs were
    partners with defendants in buying and selling tobacco, and
    plaintiffs knew, when defendants filed a petition in bankrupt-
    cy that the venture would result in loss leaving defendants
    indebted to plaintiffs though the exact amount was not
    then known and could not be known until the rest of the
    tobacco was sold.  Held that plaintiffs had an "unliquidated
    claim" against defendants within section 63, subd. "b" which
    was provable when plaintiffs filed their petition, and was
    barred by failure to present it, and the provisions of the bank-
    rupt act, permitting nonbankrupt partners to administer the
    assets, did not relieve them from reporting to the court the
    amount received in the settlement of the partnership affairs;
    its purpose not being to defeat the rights of creditors of bank-
    rupt partners.

6.  Bankruptcy—Construction of Act—Provable Debts.—The pro-
    vision of Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S.
    Compt. St. 1901, p. 3418), relating to provable debts, should
    be construed to make all debts fairly within its meaning
    provable debts, in order to effectuate the purpose of the act
    in relieving insolvents, and any doubt whether a debt is pro-
    vable, or whether it is an unliquidated demand which may be
    made provable, should be resolved in favor of its provability.

MILLER & MILLER and E. H. JAMES for appellants.

POINTS AND AUTHORITIES.

1.  It is not denied that appellees had "actual knowledge" of
the filing of the petition in bankruptcy and actually advised and
assisted in making the composition with creditors and they are·

Dycus, &c. v. Brown, &c.

therefore, now precluded from asserting this claim which arose long prior to those proceedings. Jones v. Walter 115 Ky., 556, (74 S. W., 249); Gatliff v. Mackey, 104, S. W., 379.

Confirmation of a composition discharges bankrupt. Bankruptcy Act, 1898, Sec. 14 c.

2. The claim sued on was for money advanced long prior to the filing of the petition in bankruptcy to purchase tobacco for a partnership composed of Appellees and Appellants under a written contract and was a "fixed liability" under section 63 Bank Act, 1898.

Liability was fixed from the moment the money was advanced and the judgment appealed from really so considers it because interest is charged on the advancements from the time they were made long prior to the institution of the bankruptcy proceedings.

3. But if we assume for the sake of argument that the liability was not actually fixed when the petition in bankruptcy was filed or prior thereto, the filing of the petition in this case was such a disenablement or repudiation of the contract as made it the right and duty of appellees to take steps to liquidate and prove their claim and they could have made it provable and are barred. In Re Pettingill, 137 Fed. 143; In Re Hilton, 104 Fed., 981.

4. Facts show the agreement alleged.

5. Facts shown to exist constitute an estoppel and appellees can not take advantage of their own wrong, and if appellee's contention is correct, a fraud was perpetrated to which they were a party and they are not entitled to relief therefrom.

J. D. MOCQUOT for appellees.

1. S. H. Cassidy & Co., nor their trustee in bankruptcy had any personal interest in the tobacco until the partnership was wound up, and the surviving partners were entitle to wind it up without the intervention of the bankrupt court.

2. The claim of appellees was not a provable debt against S. H. Cassidy & Co., on October 16 1903, and was not affected by their discharge in bankruptcy. In re Pettingill & Co., 137 Fed. Rep., 143; In re Imperial Brewing Co., 143, Fed Rep, 579; Rawin v. Maguire, 15 Wall 549.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In November, 1902 the appellants W. S. and J. B. Dycus and S. H. Cassidy, now deceased composing the firm of S. H. Cassidy & Co., entered into a contract

with the appellees Brown and Bloom "for the pur-
pose of buying and selling tobacco on joint account
during the season of 1902-1903." By the terms of the
contract Cassidy & Co. agreed to buy tobacco in the
country to be paid for with money furnished by
Brown and Bloom and ship the same to the Western
District Warehouse Company at Paducah for sale
by Brown and Bloom. Cassidy & Co. were to receive
60 cents per hundred pounds as compensation for
buying and delivering the tobacco. And it further
stipulated: "When all the tobacco prized and deliv-
ered under this contract shall have been sold, and all
legitimate expenses of the business have been paid
(said expenses to include commission of sixty cents
per hundred pounds paid S. H. Cassidy & Company,
all fire and marine insurance on tobacco, interest on
all money used in the business, freight, drayage and
regular warehouse charges for selling said tobacco)
then all profits or losses arising from this business
shall be divided as follows—One-half to Brown and
Bloom and one-half to Cassidy & Company." After
this contract was entered into, Cassidy & Co. bought
a large quantity of tobacco with money furnished by
Brown and Bloom, and shipped the tobacco to the
warehouse named in the contract. In October, 1903,
Cassidy & Co. composed of the members above men-
tioned, filed their petition in bankruptcy, and in Feb-
ruary, 1904, settled with their creditors on the basis
of 25 per cent. of their claims, which settlement was
approved by the bankrupt court, and thereupon the
firm was discharged and acquitted of its indebtedness.
Brown and Bloom were not mentioned in the bank-
ruptcy proceedings as creditors of Cassidy & Co., nor
was any part of the tobacco in the possession of
Brown and Bloom scheduled among the assets of the

firm, although at that time a large quantity of the tobacco purchased by Cassidy & Co., and shipped to Brown and Bloom, was unsold and in the custody of the latter in Paducah.  Some time in 1904 or 1905 Brown and Bloom sold all of the tobacco that had been purchased by Cassidy & Co., and it was then ascertained that a loss of about $11,000 had been sustained. In 1908 Brown and Bloom brought this action against W. S. and J. B. Dycus and M. A. Cassidy, the wife of S. H. Cassidy, to recover from them one-half the loss. Upon hearing the case the lower court rendered a judgment in favor of Brown and Bloom for the amount claimed, and it is of this judgment that the appellants complain.

There does not seem to be any serious dispute concerning the fact that the sale of the tobacco resulted in a loss, or the amount of it; but appellants insist that the discharge in bankruptcy released them from all liability to Brown and Bloom growing out of the tobacco transactions and that the judgment against Mrs. M. A. Cassidy was erroneous.

Taking up first the question as to the liability of Mrs. M. A. Cassidy, her connection with the transaction arose in this way: In December, 1907, her husband, S. H. Cassidy, conveyed to her all his real and personal estate, and in consideration thereof she agreed "to meet and comply with all his obligations so far as the property herein conveyed may enable her to do and comply with them." And it was averred in the petition of Brown and Bloom that "the value of the property so conveyed to and received by Mrs. Cassidy was more than sufficient to satisfy the claim of Brown and Bloom, and all other obligations of S. H. Cassidy, and that Mrs. Cassidy took said property in trust for the purpose of discharging the obliga-

tion due to Brown and Bloom, as well as all other indebtedness of S. H. Cassidy.'' These averments of the petition were confessed by the failure to deny them. We are therefore of the opinion that, unless there be some other reason for setting aside the judgment against Mrs. Cassidy, the objections to it in her behalf cannot avail her.

Cassidy & Co.—and for purposes of brevity we include Mrs. Cassidy—set up in their answer that prior to their adjudication in bankruptcy they agreed with Brown and Bloom that the latter would take all of the tobacco that had been purchased by Cassidy & Co. for the firm ''for better or worse,'' and pay all debts and expenses growing out of the purchase and sale of the tobacco; and, in consideration of this undertaking on the part of Brown and Bloom, Cassidy & Co. surrendered all interest they had in the tobacco and thereafter did not concern themselves about it, but treated the tobacco as the sole property of Brown and Bloom. They further averred that because of the agreement and transfer of the tobacco to Brown and Bloom it was not mentioned in the schedule filed by them in bankruptcy proceedings. All this was denied in a reply filed by Brown and Bloom. On the issue of fact thus presented the evidence is conflicting, but in the view we have of the case it does not seem important to further consider this phase of it.

As it is conceded that Brown and Bloom had actual notice of the adjudication in bankruptcy, and all the steps taken in the bankruptcy proceedings, they occupied towards the bankrupts the same attitude as if they had been mentioned in the petition in bankruptcy as creditors of Cassidy & Co. Jones v. Walter, 115 Ky. 556, 74 S. W. 249, 24 Ky. Law Rep. 2459.

It follows from this that if the claim of Brown and Bloom was a "provable" one under the bankrupt act, they should have presented it in the bankrupt court, and, failing to do so, are barred by the discharge in bankruptcy from recovering the amount of it in this action. If their claim against Cassidy & Co. was not a "provable" one in bankruptcy, then neither the failure to present it nor the discharge affects their right to recover. It will thus be seen that the question narrows down to the single issue of whether or not the claim of Brown and Bloom was a "provable" claim aginst Cassidy & Co. at the time the latter filed their petition in bankruptcy. That Cassidy & Co., on the one side, and Brown and Bloom, on the other, were partners in this tobacco venture is manifest from the contract. This being so it is the contention of counsel for Brown and Bloom that they were not required to surrender the tobacco to the bankrupt court, or present to the court any claim on account of probable or possible loss resulting to the partnership, and it is further insisted that their claim was not a "provable debt." Bankr. Act. July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), provides in part that: "In the event of one or more but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expediously as its nature will permit and account for the interest of the partner or partners adjudged bankrupt." And, also: "Debts of the bankrupt may be proved and allowed against his estate, which are (1) a fixed liability as evidenced by a judgment or an instrument in writing

absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date, or with rebate of interest upon such as were not then payable and did not bear interest; * * * (4) founded upon an open account or upon a contract express or implied; (5) founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for discharge * * * unliquidated claims against the bankrupt may pursuant to application to the court be liquidated in such manner as it shall direct and may thereafter be proved and allowed against his estate.''

In the assumption that Brown and Bloom did not have a provable debt against Cassidy & Co., in October, 1903, we cannot agree. Bloom was asked the following questions: ''Q. Tell whether at the time of the filing of the petition in bankruptcy, or the composition that was made, it was known whether or not the partnership venture engaged in between you, Mr. Brown, and the defendants would result in a profit or a loss. A. I expected it to be a loss—in fact, I knew it. Q. Was it known at that time whether there would be a profit or a loss? A. Not exactly; the account was not closed up yet. It was open, and some tobacco had to be sold yet.'' From this it appears that Brown and Bloom knew at the time Cassidy & Co. filed their petition in bankruptcy that there would be a loss, and consequently an indebtedness due by Cassidy & Co. to them, although the amount of it was not then ascertained. The mere fact that the total amount of the loss was not then ascertained, or the fact that it could not be ascertained until all of the tobacco was sold, did not, in

the fair meaning of the bankrupt act, leave it all an unprovable debt. Although the precise amount of the loss was not known when the petition in bankruptcy was filed, yet it was susceptible of ascertainment, and might properly be treated as an unliquidated claim, and as such it was the duty of Brown and Bloom to make application to the bankrupt court to have it liquidated, in order that it might when liquidated be proved and allowed against the bankrupt's estate. It only required a sale of the tobacco to fix the exact amount of the loss and consequent liability of Cassidy & Co., and if application had been made to the bankrupt court, it cannot be doubted that the court would have allowed a reasonable time to ascertain the loss, and have entered such orders as would protect the rights of Brown and Bloom in the meantime. The provisions of the bankrupt act in reference to provable debts should be so construed as to permit all debts that come fairly within the meaning of the law to be treated as provable to the end that the purpose of the act in permitting insolvents to be relieved of their debts may be carried out; and, where there is doubt as to whether a debt is provable or not, or as to whether it comes within the meaning of an unliquidated demand that may be made a provable debt, the doubt should be resolved in favor of the provability of the debt, or that it is an unliquidated demand in the meaning of the act, as the case may be.

That there is some confusion and apparent conflict in the cases as to what are and are not provable debts, and as to the proper meaning of the words, "unliquidated claims," must be conceded, but the weight of authority favors the view we have taken. Thus, in the case of In re Hilton (D. C.) 104 Fed. 981, the facts were that in November, 1895, Johnson made a

written contract with the firm of Hilton, Hughes & Co., in which the bankrupt  Hilton  was a partner, whereby Johnson was employed for five years at an annual salary payable monthly.   Johnson continued in this employment until August, 1896, when the firm made a general assignment for the benefit of their creditors.   Johnson was paid up to that time, and discharged from further service.   In 1899 Hilton became a voluntary bankrupt and in his schedule Johnson was named as a creditor for an unliquidated demand arising from the breach of contract, but took no steps to liquidate his claim for damages.   The question afterwards came before the court, in the bankruptcy proceedings, as to whether or not Johnson's claim was a provable debt.

In   considering  the  case  the  court  said:  "It only remained to liquidate the amount of the damages arising out of the breach of contract to make it provable like any other debt.   Section 63b expressly provides for the proof of such claims to be liquidated 'in such manner as the court shall direct.'  Having made this provision, it is impossible to suppose that it was the intent of the act to allow a creditor voluntarily to withhold such claim from liquidation, and thereby preserve it as a claim against any subsequently acquired property, and thus practically defeat the object of the bankrupt act as respects the debtor; to free him from the load of former obligations.   Section 17 provides that the discharge shall release the bankrupt from all his 'provable debts.' A provable debt as here used means in my judgment any claim that the creditor may make provable through the means provided by section 63b.   *   *   *   I cannot doubt that the intent of these words 'claim provable in bankruptcy' was to include every claim that under the provisions

of the bankrupt act might be made provable; and the definite provisions of section 63b for making unliquidated claims provable is, I think, precisely what is intended to be included in those words as distinguished from the previous word 'debt.' In my judgment, therefore, this claim as a claim that could be made provable in the manner provided by the act would be barred by the bankrupt's discharge." In the case of In re Stern et al., 116 Fed. 604, 54 C. C. A. 60, it appears that the Manhattan Ice Company entered into contracts with sundry customers to supply them with ice for a fixed period. Before the period expired, the ice company was adjudicated a bankrupt, and the question presented for decision was whether or not the persons with whom it had made contracts to furnish ice had "provable debts" against it for the damages growing out of its failure to fulfill its contract. The court held that they did. In the case of In re Silverman et al. (D. C.) 101 Fed. 219, the facts were that Rosenburg presented a claim against the bankrupt Silverman Bros. for unliquidated damages growing out of a breach of contract for his employment as manager of one of their departments. In considering the case the court, among other things, stated: "The claim being unliquidated, its allowance against the estate is provided for by subsection 'b' of section 63 of the bankrupt act, which provides that 'unliquidated claims against the bankrupt may pursuant to application of the court be liquidated in such manner as it shall direct and may thereafter be proved and allowed against his estate." The claimant was therefore premature in presenting his claim for allowance before the referee, without first making application to the court to direct the manner of liquidating it."

In the light of these authorities, and others that we have examined, we are of the opinion that Brown and Bloom had, within the meaning of the bankrupt act, an unliquidated claim against Cassidy & Co. that was a provable debt, and should have been presented in the bankruptcy proceedings; and, failing to do so, their right of recovery is barred by the discharge. In our opinion section 63b relating to unliquidated claims was intended to, and does, embrace a claim such as Brown and Bloom had at the time the petition in bankruptcy was filed. Their claim arose out of a contract. It was capable of definite ascertainment; and, although unliquidated in the sense that the exact amount they were entitled to recover was not ascertained, it was nevertheless a provable claim. Provable claims are not confined to the debts or liabilities mentioned in subsections 1, 2, 3, 4, and 5 of section 63, but include unliquidated claims arising out of contract that are capable of definite ascertainment, such as the claim we are considering. An unliquidated claim of this character may be barred by the discharge, as well as an ascertained claim due upon a note, judgment, or open account, if the creditor holding such claim fails to present it. A creditor having an unliquidated claim within the meaning of the bankrupt act can no more withhold it, and after the discharge maintain an action upon it, than he could if his claim was founded upon a judgment or a note.

In Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084, in considering the proper construction of the words "unliquidated claims" in the bankrupt act, the court, said: "In section 63b provision is made for unliquidated claims against the bankrupt, which may be liquidated upon application to the court in such maner as it shall direct, and may

thereafter be proved and allowed against his estate. This paragraph 'b,' however, adds nothing to the class of debts that might be proved under paragraph 'a' of the same section. Its purpose is to permit an unliquidated claim, coming within the provisions of section 63a, to be liquidated as the court should direct. We do not think that by the use of the language in section 63a it was intended to permit proof of contingent debts or liabilities or demands, the valuation or estimation of which it was substantially impossible to prove." In Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, the court upon the same subject said: "As to paragraph 'b,' two constructions are possible: It may relate to all unliquidated demands, or only to such as may arise upon such contracts, express or implied, as are covered by paragraph 'a.' Certainly paragraph 'b' does not embrace debts of an unliquidated character, and which in their nature are not susceptible of being liquidated." See also, Brown v. United Button Co. 149 Fed. 48, 79 C. C. A. 70, 8 L. R. A. (N. S.) 961; 9 Am. & Eng. Ann. Cas. 445.

Although the precise question presented in the case before us was not involved in the cases mentioned, the reasoning of the court supports the view we have taken.

Nor does the fact that the claim grew out of a partnership venture which must be settled add anything to the strength of the argument presented by Brown and Bloom that it was not necessary to assert their claim in the bankrupt court. It may be conceded that Brown and Bloom had the right to settle the partnership business, but it is also manifest that it was their duty to report the settlement made to the bankrupt court. If a profit had been realized on the

tobacco, the creditors of the bankrupts were entitled to their interest in it; and if a loss resulted, the partners sustaining the loss had the right to present their claim against the bankrupt's estate.   It cannot be successfully maintained that, because the bankrupt act permits those members of a partnership who are not adjudged bankrupt to administer the assets, it was intended to release so much of such assets as might belong to the bankrupt partner from the payment of his debts.   It seems evident that the purpose of the act, in giving to the members of the partnership not adjudged bankrupt the right to settle up the partnership affairs, was to protect their interest, and not to defeat the rights of the creditors of the bankrupt partner.   And in our opinion when some members of a partnership are adjudged bankrupt, and the other partners take charge of the partnership assets, it is their duty to report to the bankrupt court all steps taken by them in the winding up of the partnership business, and to report to the court the amounts, received in settlement of the partnership affairs. Brown and Bloom, however, did not pay any attention to the bankrupt proceedings, or make any report of the partnership affairs.   Their failure to do this lends support to the contention of Cassidy & Co. that they were to take the tobacco and relieve Cassidy & Co. from all liability on account thereof.   But, without further extending this opinion, we may conclude by saying that, as Cassidy & Co. were discharged from their indebtedness to Brown and Bloom, the judgment against them was erroneous.

Wherefore the judgment is reversed, with directions to dismiss the petition.

Nunn, J., not sitting.