### Security Benefit Association of Topeka v. Payne.

(Decided December 14, 1927.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Appeal and Error.—Finding of jury cannot be set aside by Court of Appeals, where there is substantial evidence on both sides of controverted fact.

2. Evidence.—Jury has right to believe evidence of one witness as against evidence of several others, where there is substantial evidence on both sides of controverted fact.

3. Insurance.—Finding of jury that fraternal life insurance society had not paid sum due under certificate to beneficiary, who claimed

that her purported signatures to instruments evidencing payment of sum due were forged, held not against preponderance of evidence.

4. Trial.—In action on benefit certificate of fraternal life insurance society, brought by beneficiary claiming that her purported signatures to instruments evidencing payment to her of sum due were forged, refusal to transfer case to equity held not error.

5. Trial.—Generally, instructions of court are error if they assume existence of fact.

6. Trial.—Instructions are always error where they assume a material fact on which evidence is in conflict.

7. Trial.—Instruction in action on fraternal benefit certificate, if assuming that individual was agent of society, held not error, where evidence showed this fact without conflict.

8. Insurance.—Instruction in action on fraternal benefit certificate, in which beneficiary claimed that her purported signatures on instruments evidencing payment to her of sum due under certificate were forged, that jury should find for beneficiary unless society had paid her the sum due, that it should deduct any sum paid to her by agent of society and any further sum that beneficiary had consented that agent might retain, held not confusing and to aptly submit every point in controversy.

MYERS & HOWARD and L. D. GREENE for appellant.

ROBERT C. SIMMONS for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

On the trial of this case in the Kenton circuit court a jury returned a verdict in favor of appellee for $2,895. The case is one to be determined from the facts, and the facts are most peculiar. A serious fraud has been perpetrated either by the appellee or the agent of appellant.

Edward W. Payne died on the 2nd day of June, 1925. At the time of his death he was the holder of a benefit certificate, calling for the payment of $3,000, in appellant, which is a fraternal insurance society. There were some small deductions from the face of the policy not material to notice. The appellee, Mrs. Kate Payne, wife of Edward W. Payne, was the beneficiary in the certificate. John D. Davis was the local representative of appellant in Kenton and Campbell counties. He was the district manager in these two counties, and he was the financier, that is, the officer who collected and remitted dues for the local lodge to which Edward W. Payne belonged.

Upon the death of Edward W. Payne, Mr. Davis notified appellant of his death, and requested that necessary blanks be forwarded for proofs of his death. Within a few days thereafter the appellee called at his office with proofs of the death of her husband and requested Davis to forward the proofs to the head office at Topeka, Kan. This he did. A few days later he was advised that it was necessary to support the proofs by an additional affidavit, and appellee again visited his office and the affidavit was prepared and forwarded to the head office.

The transactions between Mr. Davis and the appellee covered the period between the 10th of June and the 10th of August, 1925, and we shall not undertake to give the dates upon which any particular thing was done. The appellee took the benefit certificate to the office of Mr. Davis, and he explained to her that it was necessary to sign a receipt acknowledging payment of the amount due under the certificate, which receipt was printed in blank on the certificate. Appellee admits that she signed this receipt, but claims that it was not filled in at the time it was signed by her, and that she signed it because she was advised by Mr. Davis that it was necessary that it be executed before she could receive payment of the amount due. Mr. Davis testified that the receipt was filled in when she signed it. But their disagreement on this particular transaction is not material. The receipt was signed and the benefit certificate forwarded to the home office. After this there is no agreement on any point about any matter in the testimony of Mr. Davis and the appellee. Mr. Davis testified that in a few weeks he received a voucher from the home office whereupon he notified appellee and she came to his office and indorsed the voucher. He witnessed her signature on the indorsement, and her signature was also witnessed by the stenographer in his office, Mrs. Minnie Ormes. The voucher was returned to the home office, and thereafter a check payable to appellee was sent to Mr. Davis for delivery to her. He notified her that the check had been received.

So that the next transaction, according to Mr. Davis, may be understood, it is necessary to digress and bring another element into the facts. In 1921, which was some years before Mr. Davis became connected with appellant, and before he knew appellee, he learned that appellee had collected from another fraternal insurance company, the Protected Home Circle, a policy for $1,500, which had

been carried by her brother. From some source Davis had received information that the collection of this sum by appellee was fraudulent. He wrote the Protected Home Circle disclosing his information and proposing to that society that he would undertake the collection of the $1,500 with interest from appellee upon a contingent fee basis equal to one-half of what he might collect, and that his efforts would be without any expense to the society. His proposition was accepted, and the matter placed in his hands for collection. He wrote a letter to appellee about the claim, and he testified that he had seen her on several occasions about it and that she had acknowledged that the sum was fraudulently collected and that she would repay it. She told him, according to his testimony, that her husband was in ill health and was carrying a benefit certificate for $3,000 in appellant. She proposed that she would keep up the payment of premiums and upon his death she would pay the claim out of the proceeds of the benefit certificate carried by her husband.

When Mr. Davis received the check for $2,895 from the appellant he testified that he advised appellee of that fact, and she then came to his office. They discussed the claim against her in favor of the Protected Home Circle, and she agreed that she would pay the claim with interest out of the proceeds of the check. He gave her the check and she indorsed her name across the back thereof in the presence of himself and Mrs. Ormes, and both he and Mrs. Ormes witnessed her signature. At the same time he caused to be prepared an agreement, which was signed by the appellee and witnessed by Mrs. Ormes, wherein appellee agreed for him to retain out of the check the sum of $1,965 as full settlement of the claim against her in favor of the Protected Home Circle. After she had signed this agreement or consent that he might retain that sum out of the proceeds of the check he told her that the balance going to her was $930, and he would not have the money to pay the sum until the check should be collected, which would be in a few days. He deposited the check to his credit, and within a few days the appellee came to his office and he delivered to her cash and she executed to him a receipt for the $930. The receipt shows the denomination of the bills, giving their numbers. She explained to Davis that she wanted the payment in cash because she did not want some of her relatives to know that she had received the money.

With this record the original receipt executed by appellee on the benefit certificate is brought up, as is also the voucher with the indorsement of appellee thereon witnessed by John D. Davis and Minnie Ormes, the check with the indorsement of appellee witnessed by the same parties, the original agreement for Davis to deduct $1,-965 from the proceeds of the check, signed by appellee and witnessed by Minnie Ormes, and the original receipt for the $930, signed by appellee. In addition, the original check for $930 given by Davis to the bank when he obtained that sum of money to pay appellee is made a part of the record. The receipt for $930 signed by appellee was written by Davis. He had instructed his stenographer to prepare the receipt before she left the office, but she was not present when appellee came to get the money. As he could not find the receipt which had been prepared by his stenographer, he wrote another, which was signed by appellee.

All the above matters were testified to by John D. Davis, and he is corroborated fully by Mrs. Ormes. According to his testimony, supported by that of Mrs. Ormes, appellee has been fully paid the proceeds of the benefit certificate, and the documentary evidence submitted by him substantiates his testimony in every respect.

Turning now to the testimony of appellee as given by her, we find a state of facts which are exactly the opposite of the facts disclosed by Davis. She admitted that she went to his office and signed the receipt on the benefit certificate, but thereafter she was not in his office until the 10th day of August. She had called up his office on several occasions to find out if her check had been received, and each time she had been advised by Davis that the board of directors of the society had not met. Becoming suspicious, she caused her niece to call him up for the purpose of finding out what he would say to her, and he told the niece substantially the same thing. On the 10th day of August she took her niece with her and went to call on Davis at his office. When she arrived he was not in, and she waited for him to return. When he returned he told her that he had already settled with her and that he had her receipts. Quite a violent scene took place between them, as testified by her and her niece. She left the office and went into another office in the building, where she remained for a short while, and, not being satisfied with her interview with Mr. Davis, she returned to his office. She and her niece both testified that

they saw Davis in the office of Mrs. Ormes and heard him say to Mrs. Ormes that it appeared that he was going to have trouble about the matter and he had always paid her well and that she must stand by him and he would see that she was well paid. This is the substance of the statement they claimed they heard Davis make to the stenographer. Appellee positively denied that she had ever received one cent of the money, or that she had indorsed the voucher or the check, or that she signed any agreement that Davis should deduct the $1,965 from the proceeds of the check, or that she signed the receipt for the $930. She denied that the signature appearing on any of these papers was her signature. She admitted that in 1921 she had a letter from Davis about the claim in favor of Protected Home Circle, but testified that she ignored the letter and that she had never had any conversation with Davis at any time about that claim.

In rebuttal the appellant introduced four bankers who examined the signatures of appellee to the papers which she admitted she had signed and to certain checks which were introduced, and in the main they testified that in their judgment the signatures which appellee denied were written by the same person as were the signatures which she admitted were hers.

Taking the evidence as a whole it preponderates in favor of the appellant; but this court cannot substitute its judgment about such disputed questions of facts for the judgment of a properly qualified and instructed jury. If this court should set aside the verdicts of juries because it disagreed with their findings when there is substantial evidence on both sides of controverted fact it would be invading the province of juries and would tend to destroy the right of trial by jury. Where there is substantial evidence on both sides of a question of fact a jury may believe the evidence of one witness as against the evidence of several others. A jury sees the witnesses and hears them testify, observes their demeanor on the witness stand and considers many things in the conduct of a witness which this court has no opportunity to consider. The jury searches out the truth, and there are many elements which they may consider in that process which this court cannot consider. Truth is like a gem that comes from the hand of a lapidary, it reflects the light with every turning and no one is so well qualified to observe the reflections as the jury. We cannot say, therefore, that the verdict of the jury should be set aside

on the ground that it is against the weight of the evidence.

A motion was made by appellant to transfer the case to equity, and it complains because the lower court overruled this motion. Common-law courts have concurrent jurisdiction with equity courts in cases of alleged frauds such as this. Courts of law may afford relief against fraud or mistake in some cases and particularly where a suit is instituted on a contract and one of the parties claims that he is not bound by the contract because the signature was obtained by fraud. The court did not err in overruling the motion to transfer the case to equity. Bell v. Duncan et al., 196 Ky. 574, 245 S. W. 141.

Complaint is made about the instruction given by the court and because the court did not give certain instructions offered by appellant. Generally, it is error for the court in his instructions to assume the existence of a fact, and it is always error for the court to assume a material fact when the evidence is conflicting on that particular point. It is claimed by appellant that the court assumed that John D. Davis was the agent of appellant. There is no conflict in the evidence on this point as we view it. Davis was the agent to receive and deliver the check to appellee, and her case is built up on the foundation that Davis did not deliver to her the check.

The instruction given by the court is not confusing and aptly submitted every point in the controversy. The appellant was indebted to appellee in the sum of $2,895 unless it had paid that sum to her. The jury therefore was instructed to find for appellee in that sum unless it believed that appellant's agent, John D. Davis, paid the appellee some part of that sum in money, and if he did so the jury was instructed to allow appellant credit for any amount so paid. The jury was further instructed that if it believed from the evidence that appellee consented for Davis to retain any portion of the above-mentioned amount, that it should likewise allow an additional credit for such as may have been retained by him. The jury was then told in the instruction that if the credits allowed, if any, should equal the amount of the claim of appellee the jury should return a verdict for appellant. There is no error in the instruction. It submitted the entire law covering the case.

Judgment affirmed.