VILLAR & Co., INC., Plaintiff-Appellant, *v.* CARLOS CONDE-CASARIEGO, Defendant-Appellant.

No. 3901.—Argued February 24, 1927.—Decided February 9, 1928.

*J. Texidor* and *R. Cuevas Zequeira* for the plaintiff. *F. Soto Gras* for the defendant.

Mr. Justice Wolf delivered the opinion of the court.

Carlos Conde, the owner of a piece of real estate and the representative of various lines of steamship companies and of commercial firms, on the 3rd day of December, 1920, entered into a contract by which the real estate and the "representation" of these various companies and houses were sold to Manuel Mendía. The agreement on the part of Conde was that he would transfer the property either to Mendía or to the corporation which the latter might organize. It was further agreed that Conde should render his services to the new company for a term of five years at a compensation of $6,000 a year.

Among the agencies transferred in the said agreement was the Red D Line S. S. Co. This company refused to follow up the agreement made by Conde and subsequently gave its representation to another person. Thereupon the

parties made the following addition to the contract of December 3, 1920:

"Additional Clause (5th). Taking into consideration the fact that the Red D Line has transferred its agency in this Island to a different person, the foregoing contract is amended so as to reduce the price of the sale and concession in the sum of Fifteen Thousand ($15,000) dollars; but notwithstanding this, Mr. Conde shall receive the total amount agreed upon and must repay the said $15,000 to Mr. Mendía in two instalments of $7,500 each, without interest, payable on January 2 of the years 1922 and 1923, and for them Conde shall sign two promissory notes.

"It is understood that if the Red D Line should not transfer its agency to another person, this amendment shall be null and void and Mr. Mendía must cancel and return to Mr. Conde the two notes aforesaid. San Juan, P. R., Dec. 31, 1920. (Sgd.) C. Conde—M. Mendía."

By this contract it was agreed that Conde should receive $40,000. Conde actually received from Mendía or from the company the $40,000 stipulated in the original contract. He executed to Mendía the two notes of $7,500 each and Mendía endorsed them over to Villar & Co., Inc., which was the company contemplated in the contract, and the complainant in this case.

These notes were never paid by Conde and on the 6th of February, 1923, he was sued upon them by Villar & Co., Inc. Conde presented various defenses and also set up a counter-claim for $17,500 for services, inasmuch as a considerable time before the term fixed in the contract of December 3, 1920, had expired he was· dismissed from the service of Villar & Co., Inc. Conde also presented a claim for damages as for libel.

The District Court of San Juan rendered judgment for Villar & Co., Inc., on the notes in the sum of $15,000 and interest, rendered judgment for Conde in the sum of $17,500 for the services rendered, and held that the damages for libel had not been proved. Both parties have appealed.

As we entirely agree with the court in the judgment rendered against Villar & Co., Inc., we shall first consider the appeal taken by the said corporation.

The phrase in the contract to be considered was as follows:

"4—In turn, Carlos Conde personally agrees and binds himself to render his services as director or manager of the corporation to be organized, and to which the agencies and commissions of the preceding clause are transferred, for a period of five years and for a salary of *six thousand dollars* ($6,000) per annum, it being understood that the said services shall be rendered in connection with the businesses now transferred and others which during its legal existence and within the said period the corporation may transact."

While the obligor in this clause of the contract was nominally and grammatically Conde, yet there can be no doubt that Villar & Co., Inc., in accepting the sale made by Conde to Mendía, or to the company, equally or reciprocally agreed to pay Conde the sum of $6,000 during the term of the contract, if otherwise Conde complied with its terms. The intention of Mendía plainly was that Carlos Conde should aid the company in making good and profitable the agencies transferred. Carlos Conde was trading under the name of Villar & Co. The new company took over the name under which he had been trading and added "Incorporated" to the title. Many customers like to continue dealing with the person with whom they have had relations, and the personality and good will of Conde played a part in the new organization.

We have no question that Mendía and Conde could contract for the benefit of a third person, actually then non-existent, if that person accepted the contract. The subsequent acts of the corporation in accepting the agencies and employing Conde as manager was a novation, ratification and confirmation of the contract. Villar & Co., Inc., having used the services of Mr. Conde as manager, would by their acts be estopped from denying the existence of the contract.

A corporation, after all, has some relation with its incorporators, and if the incorporators, as here, make a contract by consent of all involved, the nascent corporation can be bound.

Great stress has been laid on the fact that Carlos Conde was never in fact the owner of any shares in the corporation and that the articles of incorporation required that the manager of the corporation should be a director. A director must own shares. Five shares of the corporate stock were issued in the name of Carlos Conde and by him endorsed in blank to Mendía. This was done in order that Conde might literally comply with the articles of incorporation, but it is true that Mendía always retained at least the equitable ownership of the five shares. Mendía was president of the company and we are inclined to agree with the court and with Conde that the company would in any event be estopped from setting up that Conde did not own five shares for the purpose of being manager of the company. Conde committed no fraud against the company or against the public by this arrangement. If consequences were to flow to the public then Conde could be held legally to be the owner of the five shares and it would be Mendía who would be hurt in his equitable ownership.

Moreover, if the terms of section 4, *supra,* are examined, literally it will be seen that Carlos Conde agreed to give services as director or manager and it behooved the company under the contract, it may be said, to make it possible for Conde to be such director or manager; otherwise the company would be perpetrating a fraud in accepting the agencies. The payment of a salary for services to be rendered was the idea and intention of the parties, and especially of Villar & Co., Inc.

It stands out clearly from the testimony, we think, that Conde was really removed because of irreconcilable differences between himself and Mendía. We agree with the

court below that the charges preferred were not legal excuses for refusing to pay Conde damages. We find no sufficient evidence that Conde gravely neglected the affairs of the company.

His refusal to pay the $15,000 represented by the notes was not a reason. He might not have had the cash, as his subsequent bankruptcy would tend to show, and is somewhat indicated by the fact that he did not buy five shares of the corporation. Conde had given the notes and had thus complied at least literally with his contract. The failure to pay a debt would constitute no excuse for removing him. He apparently thought in good faith that he had legitimate defenses, and one of them as we shall see was actually valid. That he believed that the notes were not an existing obligation is further evidenced by the fact that he did not include these notes in his petition for voluntary bankruptcy subsequently filed. While technically he had no right to insist that he had complied with the contract for the reason as he maintained that he had found a substitute for the Red D. Line, yet his services in aiding Villar & Co., Inc., to obtain the representation of another company might readily have been considered by a generous employer and probably would have been if Mendía and Conde could have gotten along together.

Neither was his filing a petition in voluntary bankruptcy a reason for not complying with the contract. So long as the Bankruptcy Law permits insolvent debtors to obtain discharge from existing debts by going into bankruptcy it would be against public policy to hold that a bankruptcy proceeding would release a person who was otherwise obligated to the bankrupt from the performance of a legal contract.

We find no sufficient evidence that Conde was faithless to the corporation. Indications there might have been to the mind of Villar & Co., Inc., but there was no sufficient proof. The complainant and appellant does not satisfy us

that some thefts by other persons, deteriorations or losses were such negligence on the part of Conde as to justify his removal.

A slightly more serious question presented is the measure of damages. Carlos Conde was removed as manager before his term had expired and when he still might have received $17,500 for services to be rendered. The theory of Villar & Co., Inc., is that when Conde was removed he was, under various sections of the Civil and Commercial Codes, only entitled to damages, and that he proved no damages. We shall accept what we have considered and consider to be the weight of the authorities as presented by Conde, appellee, that when a person is discharged from employment he is nominally and *prima facie* entitled to compensation for the whole period to be covered and that the burden of proof is on the person who discharged him to show either that he did or could have obtained other employment. *Hardouin* v. *Krajewsky*, 22 P.R.R. 641. Labatt on Master & Servant, vol. 1, p. 1132, among other authorities cited in the supplemental brief of Carlos Conde.

We come then to the appeal of Conde. We can not agree with him that the obtaining of another company just as good was the legal equivalent of obtaining again the lost representation of the Red D. Line. This was one of his defenses to paying the $15,000 claimed by Villar & Co., Inc. His contract literally called for the re-establishment of the representation of the Red D Line and substitutes for it were not being considered by the parties at the time. It would appear that at the time that he obtained the representation of another company he was actually in the employ of Villar & Co., Inc., who was entitled to the benefit of his services. Furthermore, the court found, and we do not see that it was mistaken, that the new company was obtained rather by the instrumentality of Mendía than that of Conde.

Nor can we agree with Conde that the additional clause

to the contract heretofore copied was not binding on him. The best way to consider this additional clause was that it was an amendment to the contract made to cover the detriment suffered by Villar & Co., Inc., in not obtaining the agency, proposed in the contract, of the Red D. Line.

The notes were executed by Conde in favor of Mendía. They became in fact obligations enforceable independently and Mendía endorsed them over to Villar & Co., Inc. As they were obligations enforceable independently we feel bound to hold that they were extinguished by Conde's discharge in bankruptcy applied for and obtained quite a little time after the execution of the contract and the notes. The court below passed over this point raised by the original defendant, and Villar & Co., Inc., has not discussed it. The appellant Conde and our own researches have convinced us that the defense is good. Each party has raised probably every conceivable defense to the claim of the other and we feel bound to decide this one in favor of Conde.

Section 17 of the National Bankruptcy Act provides:

"Debts not affected by a Discharge.—A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (1) are due as a tax levied by the United States, the State, county, district, or municipality in which he resides; (2) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, or for alimony due or to become due, 'or for maintenance or support of wife or child, or for seduction of an unmarried female, or for criminal conversation; (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

Under clause 3 debts not duly scheduled in the time for proof and allowance are not affected by a discharge unless the creditor had the notice or actual knowledge of the pro-

ceedings in bankruptcy. In the case of an ordinary provable claim the authorities, we find, are unanimous that actual knowledge or notice to the creditor in time to file a claim will prevent him after a discharge from attempting to collect from the bankrupt. *Perry Naval Stores Co.* v. *Caswell,* 63 Fla. 556, 57 So. 662, a case where notices to the principal officers of a bank while engaged in business were notices to the bank. *Reinhardt* v. *Friederich,* 58 Ind. App. 425, 108 N. E. 260, and cases; *Dycus* v. *Brown,* 135 Ky. 140, 28 L.R.A. (N. S.) 190; *Morrison* v. *Vaughan,* 119 App. Div. 184; *Kreitlein* v. *Ferger,* 238 U. S. 35; *Birkett* v. *Columbia Bank,* 195 U. S. 345; *Roig* v. *Barletta,* 28 P.R.R. 561, the last named case being one where the principle was cited but in which no sufficient notice was shown.

The authorities differ among themselves as to where the burden of proof lies in the showing whether a debt was included or not in the schedule and other similar matters, but there is no question that if a creditor had in time actual notice of a provable debt the discharge exonerated the bankrupt from its payment. In the case at bar there could be no serious question that Villar & Co., Inc., had complete cognizance of the pendency of the bankruptcy suit. Its officers had some intervention in the proceeding. The pendency of the bankruptcy petition was made a ground for the dismissal of Conde. The company in its defense in this case said that the bankruptcy of Conde was an excuse for dismissal.

If it should be urged that the contract of December, 1920, was an entire matter between the parties, nevertheless the claim of Conde for $17,500 had not accrued at the time of pendency of the bankruptcy proceeding. Conde or his trustee could not on the score of services to be rendered have defended against the claim of $15,000 of Villar & Co., Inc. The two claims could not have been set off against each other at the time of the presentation of the petition in

bankruptcy or within the time that provable debts might have been presented.

Conde also put in a claim for a libel inasmuch as the corporation passed a resolution on the 3rd of February, 1923, discharging him and accusing him of various matters. We do not hold that the words of this publication were in fact a libel, but even if it were libelous what the court below held was that no damages had been shown, and we find none.

The judgment of the District Court of San Juan should be reversed in so far as it rendered judgment against Carlos Conde in the sum of $15,000, and in all other respects affirmed.

Mr. Justice Texidor took no part in the decision of this case.