# Jewell v. Janes.

(Decided March 17, 1931.)

L C. WINFREY and TOWNSEND & PARK for appellant.

HURT & HURT for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

W. R. James instituted action in the Adair circuit court against R. C. Cundiff, Ernest Shearer, John B. Jewell, and the Jewell Tobacco Warehouse Company. In his petition as amended, he alleged that the defendants, as partners, purchased from him 1,146 pounds of tobacco in November, 1929, at the agreed price of $286.50, which they promised and agreed to pay, but none of which had been paid.

The defendant, J. B. Jewell and the Jewell Tobacco Warehouse Company by their separate answer denied the existence of the partnership alleged in the petition. The court sustained a motion for a peremptory instruction as to the defendant the Jewell Tobacco Warehouse

Company. The defendants R. C. Cundiff and Ernest Shearer having failed to file an answer or make any defense, a default judgment was taken against them; but as to the defendant J. B. Jewell the jury returned a verdict finding for the plaintiff, and he is here on a motion for an appeal from the judgment.

Mr. Janes testified that he sold his tobacco to Cundiff and Shearer, and they gave him a draft on the Jewell Tobacco Warehouse Company; that they represented to him that they were purchasing tobacco in connection with Mr. Jewell and the warehouse; that he delivered his tobacco to them at Sam Stevenson's warehouse; that the draft which Cundiff gave him was not honored. The plaintiff called and introduced Cundiff and Shearer as witnesses, and their evidence on all material points was the same. There is, however, some discrepancy as to when they entered into the contract or agreement with Mr. Jewell to purchase tobacco. It appears that, before the negotiations were finally completed, Shearer and Cundiff made two trips from their home in Adair county to Lexington to confer with Mr. Jewell. Cundiff testified that the deal was made with Mr. Jewell on the first trip to Lexington, but Shearer testified that it was made on the second. They were, however, in substantial agreement as to what passed between the parties in making the alleged partnership contract. They testified that as between them and Mr. Jewell it was agreed and understood that they were to go into Adair and adjoining counties and purchase tobacco. This tobacco was to be delivered and weighed at Columbia, and from there transported to the Jewell Tobacco Warehouse at Lexington, where it would be sold over the floor of the warehouse. Mr. Jewell was to furnish the money to purchase the tobacco and to pay for trucking it to Lexington, and, as expressed by each of these witnesses, the three were to go "thirders" in the business. Sam Stevenson was introduced by plaintiff, and testified that he received at his warehouse in Columbia the tobacco purchased by Shearer and Cundiff, and that it was hauled to Lexington on his trucks; that his trucking bills were paid by checks of the Jewell Tobacco Warehouse Company. He testified that at one time, about Thanksgiving Day, a driver of one of his trucks called him by telephone from Lexington, and in the conversation informed him that

Mr. Jewell wanted to speak to him; that a party at the other end of the line, who represented himself to be Mr. Jewell, asked him to send all the tobacco up the next day, but that he told Mr. Jewell there were ten or eleven thousand pounds of it. Mr. Jewell, or the party at the other end, told him to get other trucks and send the tobacco in, and that he did send the tobacco by trucks the next day.

Mr. Jewell testified that he did not enter into any partnership agreement with Shearer and Cundiff, but he only agreed to advance them some money at 6 per cent. interest, and he did this in order to secure business for the warehouse of which he was president; that his only interest in the matter was to secure business for the warehouse. He did advance $500 to Cundiff and Shearer, the draft or check being forwarded to the bank at Columbia, after the visit of Cundiff and Shearer to Lexington. Mr. Jewell took no note for the money, and, after this sum was used to pay on tobacco purchased, some controversy arose about drawing drafts. It seems that Cundiff and Shearer were under the impression that Mr. Jewell had given them blanket authority to draw these drafts, but he understood that he would advance the money to pay for enough tobacco, on which they had made advancement out of the $500 to complete a load to be sent to him. If it was found that they were buying on a safe margin, he would arrange to pay for the next load. On October 2, Mr. Jewell wrote to Cundiff that he would not have any more money to advance until November 15 or 20; this seemingly being a reply to a letter which is not shown in the record. In this letter, he made the statement that he was sorry, but, as he had told Cundiff in Lexington, he had used up his credit. Previous to the time this letter was written, Cundiff had drawn a draft for $7,000 on Mr. Jewell which Mr. Jewell had refused to honor.

When Cundiff learned that the $7,000 draft had not been honored, he wrote a letter to Mr. Jewell in which he set forth his understanding of the agreement they had entered into, and in substance stated that they would not have drawn the draft if Mr. Jewell had not told them to; that they had done just what they had promised him they would do; that they had purchased about 30,000 pounds of picked tobacco, and had promised to take up the crops as soon as they were ready, but it seemed that they would have to turn their contract over to another house;

that, as soon as they secured the money for the tobacco, they would pay Mr. Jewell his advancement of $500, with interest. He closed his letter with this statement: "I don't know what else to do as you claim you can't take it up. I don't want to disappoint enney one."

In reply to Cundiff's letter, Mr. Jewell wrote him a letter under date of November 2, in which he stated that Cundiff had misunderstood him, and that he had said, or had meant to say, for Cundiff to receive the tobacco at Columbia and draw a draft to each person for the amount coming to him, and to send to him a list of these drafts just as soon as a load was secured, and to bring the load on over to the warehouse. In this letter it was further stated: "If your banker wants you to, we will have the banks here advise, that they will pay your various drafts up to $1,500. That will pay for more than you can haul in one lot."

On November 8, Cundiff wrote Jewell a letter in which he said he wanted Jewell to feel safe about the $500 advanced, and also stated that he had bought some tobacco for 30 cents, but "I done this for your benefit in order to get this on your floor. I knew we could not lose on this tobacco, was not expecting anything myself but was making a run for you."

On November 15, Cundiff wrote to Mr. Jewell, and, omitting the formal parts, the letter is as follows:

"Was glad to hear from you I went to Columbia on Sunday the time I promised you I would call you and we never could get Lexington. We have got next Monday set for these men to go and look at the crops we have bought and I know Monday if we trade enny or not. But now Mr. Jewell if you want us to not trade with them I feel that I owe you everything most if I do make enny money for you will be the cause of us making this money and I going to do more than pay you your $500.00 and interest I am going to show you that I am honest about these things. I did not know but what some one was trying to brake me down with you. You will hear from me about next Tuesday I will call you. some time during the day. These people was going to pay in full just as soon as we could weigh this tobacco up. I wont take no chances."

After the controversy and seeming misunderstanding as to drawing the drafts arose, Mr. Jewell sent Price Peniston to Adair county for the purpose, as stated by Mr. Jewell, of collecting from Cundiff and Shearer the $500 which he had advanced to them if the tobacco had been sold, and, if not, to take up a load or two on which advancement had been made and to draw drafts for balance due thereon, and to notify Cundiff and Shearer to draw no more drafts. Cundiff and Shearer, however, stated that Peniston went with them to look at several crops of tobacco, and himself drew a number of drafts on Jewell for tobacco they had purchased. Cundiff stated that, when Mr. Peniston left, he gave him instructions to continue to draw drafts as he had theretofore done.

Mr. Jewell admitted that on or about Thanksgiving Day he had a telephone conversation with Stevenson, but said that he did not tell him to bring to Lexington, the next day, the tobacco in Sam Stevenson's warehouse which had been purchased by Cundiff and Shearer.

While Cundiff was testifying, a number of the contracts under which he and Shearer had purchased tobacco from growers were shown to him. All these contracts were signed by Cundiff and Shearer. The name of Jewell did not appear upon but one of them, and that had been written by Cundiff at the grower's request. Cundiff and Shearer testified in detail about these contracts; that only their names had been signed as purchasers except in the one instance. Cundiff testified that Mr. Jewell instructed him to make the contracts in that way. These contracts were placed in evidence.

There appears in the evidence a contract dated December 2, 1929, which is signed Jewell Tobacco Warehouse Company by L. B. Jewell, President, Cundiff and Shearer, R. C. Cundiff, Ernest Shearer. In this contract, it is recited that the warehouse company had loaned certain amounts of money to pay for crops of tobacco bought by them; that all the tobacco had been bought by them upon their own account and upon their own responsibility, and it provided that all the tobacco should be sold by the warehouse, and, after the payment of the warehouse charges and the money advanced by the warehouse, the balance should be held by the warehouse company until the obligations of Cundiff and Shearer to growers of tobacco purchased had been settled, and all claims against the tobacco satisfactorily adjusted.

Mr. Jewell and the attorney who drew this contract testified that it was voluntarily entered into by Cundiff and Shearer, and that they fully understood its contents; that they were present when it was dictated, and it was read to them before they signed it. Cundiff and Shearer both testified that Mr. Jewell stated to them that he wanted them to sign a writing in order that he might pay for the tobacco; that nothing whatever was said about them having bought the tobacco on their account. Mr. Cundiff testified that he was intoxicated at the time the contract was made, and Mr. Shearer said that he did not know what was in the contract. A number of growers from whom Mr. Cundiff purchased tobacco testified that they were present when this contract was executed, and that no statement as to Cundiff and Shearer having purchased this tobacco on their own account was made.

Appellant's attorneys argue four grounds on which they rely for a reversal of the judgment of the lower court, and we shall treat these in the order of their presentation.

It is first urged that the evidence of the witnesses, Cundiff and Shearer, as to the alleged partnership contract between them and appellant, amounted to mere conclusions and opinions rather than a recital of what was said at the time; that the court therefore erred in admitting their evidence. It is true that some of the answers were purely conclusions upon the part of the witnesses, but they did go into detail and recited conversations between them and Jewell to the effect that an agreement was reached whereby they would go into Adair and adjoining counties and purchase tobacco which was to be sold over the floor of the Jewell Tobaco Warehouse; that Jewell was to furnish money to pay for the tobacco and the cost of transporting it to Lexington, and they were each to share equally in the net profits arising from the sale of the tobacco. Their recital of the conversations that occurred between them and Jewell was competent as bearing on the question of the alleged partnership agreement, and tended to establish all the elements of a partnership.

An attack is made upon instruction No. 3 given by the court. In this instruction, the court in substance instructed the jury that the contract of December 2 which was signed by Cundiff and Shearer and the con-

tracts which they had made with the growers were only competent in so far as they tended to affect the credibility of Cundiff and Shearer as witnesses, and for no other purpose.

It is first contended that these contracts were substantive evidence and competent as bearing on the question as to whether a partnership existed. In the second place, that, if they were not competent for that purpose, the court should have given an oral admonition and not a written instruction limiting the effect of this evidence. The prevailing practice in this state is for the court to orally admonish the jury as to the effect of evidence offered in impeachment of the witnesses, but appellant's attorneys cite no authority holding that it is prejudicial to give a written instruction to a jury limiting the purpose of such evidence, and we conclude that the court did not commit a prejudicial error in so doing in this instance. As to the insistence of the counsel that these contracts were substantive evidence and competent as bearing on the question of the alleged partnership relation, we might say that, assuming, though not deciding, that they were competent for the purpose indicated, there was other and ample evidence to show the contents of these contracts and that Cundiff and Shearer signed them. In fact, they both testified that they signed the contracts with the growers, and that Jewell's name did not appear on any of these contracts except one, and his name was signed to that by Mr. Cundiff at the request of the grower; so every fact that could have been established by these contracts was amply established by other evidence.

It is further urged by appellant's counsel that the verdict of the jury was flagrantly against the weight of evidence, and was not sustained thereby.

There was a sharp conflict in the evidence as to whether a partnership agreement was made between Cundiff, Shearer, and Mr. Jewell, and there is substantial evidence on both sides of that question. It was a matter clearly within the province of the jury to weigh this conflicting evidence and to determine the weight to be given to the testimony of the various witnesses, and in so doing, they were not bound by a preponderant number of witnesses on one side of the issue, but at their discretion had a right to accept the evidence of a single witness on the one side as against a number of witnesses

on the other. Jennings v. Fain, 226 Ky. 290, 10 S. W. (2d) 1101; Security Benefit Association v. Payne, 222 Ky. 332, 300 S. W. 861.

The jury having weighed the conflicting evidence in this case, and having determined it against the appellant, and it appearing that there was substantial evidence on which to base that verdict, it should not be disturbed.

The fourth and last objection raised by counsel is leveled at instruction No. 1, given by the court. In this instruction, the court in substance told the jury that, if J. B. Jewell agreed with Cundiff and Shearer to furnish them money to buy tobacco in Adair and adjoining territory, to be delivered to them at Sam Stevenson's warehouse, and to be transported from there by Jewell to the Jewell Tobacco Warehouse Company at Lexington and there sold, and that defendants J. B. Jewell, R. C. Cundiff, and Earnest Shearer were each to have one-third of the profits realized from the buying and sale of this tobacco, the verdict should be for the plaintiff, but, unless the jury so believed, they would find for the defendant. The objection to the instruction seems to be based on the hypothesis that it only submits the question of participation in the profits. If the instruction were subject to that criticism, it would be erroneous, but an examination of this instruction at once reveals that it embodies more than the idea of participation in the profits.

There is evidence to indicate that Jewell, Cundiff, and Shearer associated themselves in an enterprise to which Mr. Jewell contributed the necessary capital and to which Cundiff and Shearer contributed of their time, labor, and of such business acumen as they possessed in the purchasing of tobacco, with the agreement and understanding that, when the tobacco was sold, each of them was to receive one-third of the profits arising therefrom. If this evidence is to be credited, it is sufficient to show a partnership agreement.

Appellant's attorneys cited the case of Edwards v. Johnson, 219 Ky. 113, 292 S. W. 750, 751, in support of their assertion that a mere share in profits does not constitute a partnership, but in that case it is said:

"Ordinarily, those persons are partners who contribute either property or money to carry on a

joint business for their common benefit, and who own and share the profits in certain proportions."

Where one party, under a contract, undertakes to advance money to buy tobacco and the other person to perform the personal service required in buying the tobacco, and each party is to share in the profits, such parties under decision of this court are partners. Dycus et al. v. Brown et al., 135 Ky. 140, 121 S. W. 1010, 28 L. R. A. (N. S.) 190; Clarke v. Ware, 8 Ky. Law Rep. (abstract) 438.

In the light of the foregoing authorities, the instruction under criticism did with reasonable clearness present to the jury for their decision the issues involved in this case.

Motion for appeal denied, and judgment affirmed.